SOPER v. BRECKENRIDGE.

MAY TERM
1835.

Soper
v.
Breckenridge.

1. B. sold to S. a negro, and executed a Bill of sale in substance as follows. "For and in consideration of &c., paid &c.—I have sold to B. S. a negro &c. Sound in body and mind and slave for life. I bind myself to warrant the right and title of said negro from all and every person, &c."

2. Held to be a warranty as to title only and a mere representation as to soundness.

3. If a slave warranted sound, be only slightly diseased, and come to its death by negligence or cruel treatment of the purchaser, the seller is not liable for the full value or price—but only to the extent of injury occasioned by the disease.

4. McGirk C. J. dissenting.—The words in the bill of sale amount to a warranty of soundness.

ON APPEAL from the Clay Circuit court.

The opinion of the court was delivered by WASH, Judge.

This was an action commenced by Soper (who is appellee,) against Breckenridge (who is appellant,) on a warranty of soundness in the sale of a negro girl. On the trial in the circuit court, the plaintiff and appellee got judgment and Breckenridge has appealed to this court. A variety of questions arising out of instructions given and refused on one side and the other have been presented and argued with great force and ingenuity by the counsel on both sides. We shall not attempt to dispose of the several questions in detail. It is enough, that upon the main point the law is with the appellant and the plaintiff in the court below could not recover, in this action, if the judgment were reversed on other points and the cause remanded. The plaintiff relied upon the following bill of sale as evidence of the warranty, viz:

B. sold S. a negro, and executed a bill of sale in substance as follows. "For and in consideration of &c. paid &c. I have sold to B. S. a negro &c. sound in body and mind and slave for life. I bind myself to warrant the right and title of said negro from all and every person &c." "For and in consideration of the sum of two hundred and sixty-seven dollars and fifty cents, I have this day sold unto Benjamin Soper one negro girl named Dinah, sound in body and mind and slave for life. I bind myself to warrant and defend the right and title of said negro from all and every person or persons whatsoever, given under my hand this 7th day of September, 1833.

(Signed)        EDDY L. BRECKENRIDGE."

Mr. Rees for the appellee, insists that this bill of sale contains within itself an express warranty that the negro was, at that time sound, and has cited Comyn on contracts 116, note 76, 117–18, 121–2, Chitty on contracts 133, 10th John. R. 484, 19th J. R. 290 and other authorities.

Mr. Wilson for the appellant, insists, that the Bill of sale does not amount to a warranty of the soundness and has cited Litt's. select cases 228, 20th J. R. 196, 19th J. R. 290, 2 Bibb 616, 3 Bibb 35, 3 Am'r. Digest 571, and other authorities therein referred to. Cases strongly analagous to the present, have been adjudged differently in different courts and we shall not attempt to reconcile them. We incline to take the doctrine as laid down in the cases from 2 and 3rd Bibb, cited by the appellant's counsel. The case relied on by Mr. Rees from 10 J. R. 484 is not fully stated and we cannot see whether the words used were intended as a mere description of the slave, or simple affirmation of quality and condition, or were such as imported an agreement to warrant that she was sound and healthy at the time. The connection between the warranty of title and the words which were held to import a warranty of soundness is not seen and no authority is referred to.

The case in 2 Bibb 616, was upon precisely such a bill of sale as the one above set out. In that case the court say. "That the appellee did not intend warranting the negro sound, we think evident from the writing. It contains an acknowledgment of the Receipt of the money for which the negro was sold, a representation that he was sound, and an express warranty of title. Had the appellee intended to warrant the negro sound, it is most reasonable to suppose the warranty would have been so worded as to embrace it. This not having been done, evinces clearly an intention to warrant the title only."

This is precisely what we think in the present case. It is not a simple affirmation of soundness, which according to the New York case might import an agreement of warranty; the vendor has manifested a purpose to warrant the title about which he could know and judge correctly, and of which the vendee may reasonably be supposed to know nothing, whilst in regard to the health of the negro, which the vendee had the means of ascertaining, and of which he might have judged as well or better than the vendor himself, he makes a simple statement or affirmation, if you will; in which the vendee might or might not have confided. The intention of the parties in every such case, should govern and prove the distinction taken between the health and condition of the negro and the title and the express warranty of the title; we feel concluded from inferring from the first clause of the Bill of sale an agreement to warrant the girl sound in body

and mind &c. The general doctrine has been correctly stated by the appellee's counsel. No particular phraseology is requisite to constitute a warranty; any representation of the state of the thing sold, or any direct and express affirmation, by the vendor, of its quality and condition, *and shewing an intention to warrant its soundness will be sufficient.* But in this case the intention is not left to be inferred (as we think) from the affirmation that the girl was sound in body and mind, but is *shewn clearly* by the clause of warranty applied to the title, as before stated.

This disposes of the cause, and the judgment of the circuit court must be reversed with costs. It may not be amiss however, to notice one other point which is presented in the record. During the progress of the trial in the circuit court, the counsel for the appellant who was defendant below, asked the court to instruct the jury "that if they found from the evidence, that the slave was only slightly diseased, if at all, and that she came to her death by negligence or cruel treatment of the plaintiff, the defendant is not liable for the *whole value of the slave*, but only to the extent of the injury occasioned by the disease."

This instruction was refused and likewise several other instructions varying but slightly from the above, and presenting substantially the same point; and the question now raised is, did the circuit court err in refusing these instructions? It seems to us very clear that the circuit court did err upon this point. In the case of Curtis v. Hannay 3 Esp. Rep. 82 Lord Chief Justice Eldon laid it down as clear law, that if a person purchase a horse which is warranted, and it afterwards turn out that the horse was unsound at the time of the warranty, the buyer might if he please, keep the horse and bring an action on the warranty, or he might return the horse and bring an action to recover the full money paid;" and his Lordship said "if a person keeps a warranted article for any length of time after discovering its defects, and when he returns it, it is in a worse state than it would have been if, returned immediately after discovery, I think the party can have no pretence to an action for the price of the article on the ground of non compliance with the warranty, but must be left to his action on the warranty, to recover the difference in the value of the article warranted, and its actual value when sold." This we hold to be the true doctrine. The purchaser it is true may have his action

on the warranty, without returning the article or giving notice to the seller of its unsoundness; but then he will not be permitted to recover the full money, but only the difference between the actual value of the article when sold and the price at which it was sold. To permit the purchaser after retaining and using the article or receiving the profits of its labour for a month, a year, or ten years, or when by neglect or improper treatment, the value of the article has been not merely impaired but entirely distroyed; to sue for and recover the full money without allowance or charge for the use or profit, would be as repugnant to the principles of justice and humanity, as of public policy. On this point therefore, if there were none other in the cause, the judgment of the circuit court would have to be reversed and the cause remanded, but the law on the first point being with the appellant, nothing could be gained by remanding.

McGirk J. ——— I am of opinion that the words contained in the Bill of Sale do amount to a warranty; as much so as if the seller had said, I warrant, or I promise the slave is sound. As to the second point decided by the court, I think the opinion correct.